IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| PATRICIA KING, | * | |
| | * | |
| Plaintiff | * | |
| | * | Civil No. PJM 08-2934 |
| v. | * | |
| | * | |
| SALLIE MAE, INC., | * | |
| | * | |
| Defendant | * | |
| | * | |

## MEMORANDUM OPINION

Plaintiff Patricia King sued Defendant Sallie Mae, Inc., alleging intentional violations of the Fair Debt Collection Practices Act, 14 U.S.C. § 1692, *et seq.*, based on a call a Sallie Mae employee placed to King's father, during which allegedly impermissible information affecting King's reputation was disclosed. On June 5, 2009, immediately following a settlement conference before Magistrate Judge Schulze, the parties signed what was intended to be a settlement agreement. On June 9, 2009, the case was dismissed without prejudice, subject to the right of either party to move for good cause to reopen the action within 30 days. Since that time, a dispute has arisen between the parties as to whether in fact they have an agreement. King has filed a Motion to Reinstate Civil Action as well as a Motion for Summary Judgment, and Sallie Mae has filed a Motion to Enforce Settlement Agreement and a Motion for Rule 11 Sanctions. For the following reasons, the Court **GRANTS** Sallie Mae's Motion to Enforce Settlement Agreement; **DENIES** King's Motion to Reinstate Civil Action and Motion for Summary Judgment; and **DENIES** Sallie Mae's Motion for Rule 11 Sanctions.

-1-

**I.**

The parties participated in a settlement conference before Magistrate Judge Schulze on June 5, 2009. At the conclusion of the conference, the parties signed the attached written settlement agreement ("June 5 Settlement"), which consisted of three key terms: (1) Sallie Mae was to provide a letter of apology to King's father; (2) Sallie Mae was to "credit" a debt on a student loan that King owed Sallie Mae by $19,000, with "no strings;" and (3) King was to execute a full release. The parties also agreed that Sallie Mae would be responsible for drafting a formal written document memorializing the terms of the agreement and that King would provide Sallie Mae with a draft apology letter to be sent to her father.

On June 8, Sallie Mae sent King a proposed Settlement Agreement and Release ("June 8 draft) to King via electronic mail, and requested that she provide the proposed text for the apology letter. By letter dated June 7, King advised Sallie Mae that she was unable to draft the apology letter and requested that Sallie Mae draft it instead.

King contends that she also sent an electronic mail message on June 9, alerting Sallie Mae to the fact that she was unable to sign the June 8 draft because it did not comport with the terms discussed at the settlement conference. King was concerned, among other issues, about the tax implications relating to Sallie's Mae's description of the $19,000 credit, the broad nature of the release, the confidentiality provision that had been added, and the fact that there was no mechanism for enforcement the agreement.

Sallie Mae claims that it did not receive King's message, and consequently, on June 16, sent her a Settlement Agreement and Release ("June 16 draft"), which included the same terms it had proposed in the previous draft, but with the addition of a draft apology letter. King

responded to the June 16 draft by citing her prior electronic message and reaffirming that she was not able to sign the Agreement as drafted. She stated that she would, however, be willing to sign an agreement that included: (1) a general release of her claims against Sallie Mae; (2) a confidentiality provision for both King and her father; and (3) complete debt forgiveness of her student loan debt to Sallie Mae, rather than simply a credit for $19,000. In exchange, King indicated she would withdraw her request for mutual confidentiality provisions and the letter of apology.

At the request of Sallie Mae, King also forwarded her June 9 electronic mail message which contained specific edits to the June 16 draft. On June 25, Sallie Mae responded to King's June 19 letter, reiterating its intent to enforce the terms of the June 5 settlement. In addition, Sallie Mae addressed King's concerns about the prior draft by providing a new draft Settlement Agreement ("June 25 draft"), which incorporated some of King's edits, to the extent that Sallie Mae believed they were consistent with the terms negotiated at the settlement conference.

Rather than responding to the proposed revised agreement, on June 29, King filed a Motion to Reinstate Civil Action and a Motion for Summary Judgment. In response to that, on July 7, Sallie Mae advised King that, in its view, both her Motions violated Federal Rule of Civil Procedure 11. King responded via electronic mail on July 9, stating her belief that her Motions were not frivolous, since Sallie Mae was attempting to include provisions in its agreement beyond those agreed to during the settlement conference.

On July 16, Sallie Mae filed a Motion to Enforce Settlement Agreement. After speaking with Judge Schulze about the case, Sallie Mae sent King a revised agreement ("July 27 Agreement"), in which it specifically denominated the $19,000 as a "credit," limited the release of

Sallie Mae to any claims related to the student loan in question up to the present, and removed the confidentiality provision. After King refused to sign the July 27 Agreement, Sallie Mae filed its Motion for Rule 11 Sanctions.

II.

In her various Motions, and in response to Sallie Mae's Motion to Enforce Settlement Agreement, King argues that the June 5 Settlement is not enforceable because there was no "meeting of the minds" as to the meaning of two key terms used in the agreement: (1)"full release;" and (2) "credit." King contends that she understood "full release" to mean a release of claims only as to the case being litigated, while Sallie Mae understood it to mean a release of all claims King might have against it, whether or not they directly relate to the present case. As to the "credit," King argues the June 5 Settlement stated that the $19,000 was to be a credit with no strings attached, whereas in the drafts Sallie Mae forwarded to King, it was referred to as a "write-off," which purportedly would have negative tax consequences for King. Furthermore, King argues that Sallie Mae's draft agreements contained several additional terms not discussed in the settlement conference.

Sallie Mae argues that the June 5 Settlement contained clear and unambiguous terms that should be enforced. As to King's concerns, Sallie Mae notes that it addressed each of them in its July 27 Agreement. It expressly classified the $19,000 debt forgiveness as a "credit;" it limited the language of the "full release" to only those claims relating to King's loan serviced by Sallie Mae in the past and up to the present; and it removed the confidentiality provision, which was not referenced during the settlement conference. There can be no dispute, says Sallie Mae, that the July 27 Agreement accurately reflects the core terms of the June 5 Settlement, and that King's

-4-

refusal to sign constitutes a breach of the June 5 Agreement, and amounts to nothing more than a blatant attempt extract more money from Sallie Mae.

## III.

A district court has inherent authority to enforce a settlement agreement and enter judgment based on the agreement without a plenary hearing. *Petty v. Timken Corp.*, 849 F.2d 130, 132 (4th Cir. 1988); *Ricks v. Abbott Laboratories*, 65 Fed. Appx. 899, 901 (4th Cir. 2003). This authority arises by reason of the court's "inherent equitable power summarily to enforce a settlement agreement when the practical effect is merely to enter a judgment by consent." *Millner v. Norfold & Western Railway Co.*, 643 F.2d 1005, 1009 (4th Cir. 1981). In order to enforce a settlement agreement, a court "(1) must find that the parties reached a complete agreement and (2) must be able to determine its terms and conditions." *Hensley v. Alcon Laboratories, Inc.*, 277 F.3d 535, 540-41 (4th Cir. 2002) (internal citations omitted). The fact that a party may have "second thoughts about the results of a valid settlement agreement does not justify setting aside an otherwise valid agreement." *Id.* at 540 (internal citations omitted).

## IV.

The Court agrees with Sallie Mae that the July 27 Agreement is consistent with the terms agreed to at the June 5, 2009 settlement conference and should be enforced. A plenary hearing is not necessary. There is no material dispute that a settlement agreement was intended. *See Ricks*, 65 Fed. Appx. at 901. It was memorialized by Judge Schulze and signed by the parties.

The agreement is sufficiently complete. It contains all of the essential terms: a credit to King and a letter of apology to her father in exchange for a release of Sallie Mae. So long as the memorandum agreement of the parties contained all the essential terms, the fact that a final

written agreement may have been contemplated would not mean, should the eventual writing not be signed, that the parties had no contract. *See e.g., Sabetfard v. Djavaheri Realty Corp.*, 18 A.D.3d 640, 641 (N.Y.S.2d 2005) ("[t]hat the parties anticipated the execution of a more formal contract would not impair the effectiveness of the writing if it, in fact, embodies all of the essential terms of the agreement") (internal citations omitted).

As for the meaning of the terms of the agreement, the Court employs an objective standard to determine the parties' intentions as to the core terms of the settlement agreement in this case, as memorialized by the June 5 document executed on Judge Schulze's letterhead and attached hereto. *See Dennis v. Fire & Police Employees' Retirement System*, 890 A.2d 737, 747 (Md. 2006) (Maryland has "long adhered to the objective theory of contract interpretation, giving effect to the clear terms of agreements regardless of what the parties may have intended by those terms at the time of contract formation") (internal citations omitted). There does not appear to be any dispute as to the plain import of the apology letter. A simple "we apologize for any misunderstanding" would certainly suffice. Any potential dispute relating to the term "credit" was cured by the July 27 Agreement, which explicitly employs that term. The same is true as to the confidentiality provision, which was not part of the June 5 Settlement, and which was removed from the July 27 Agreement.

Objectively speaking, the term "full release" admits of little doubt. The plain meaning of the term is that it would release all King's claims against Sallie Mae, past and present. King's contention that she understood the term to only mean a release of the specific claims relating to this suit is disingenuous. A "full" release would not make sense if the only claims being released were the ones specifically raised in the case. The Court agrees with Sallie Mae that by this term,

objectively understood, Sallie Mae would be released from any liability up to the point of the June 5 Settlement.

Because the Court finds the settlement agreement to be valid, there is no reason to reopen the case. King's Motion to Reinstate Civil Action and Motion for Summary Judgment therefore will be denied.

### V.

While the Court finds that the July 27 Agreement is enforceable, since it accurately reflects the essential terms of the June 5 Settlement, it does not believe Rule 11 sanctions against King are appropriate. The June 8, June 16, and June 25 drafts each contained terms that differed in one respect or another from the terms of the June 5 Settlement. It is true that some of those drafts differed from the June 5 Settlement because Sallie Mae was attempting to meet King's changing demands. But regardless of the reason, King was within her rights to reject any draft that did not clearly comport with the June 5 Settlement. It was not until the July 27 Agreement that the core terms of the June 5 Settlement were incorporated fully with no additions. While King should have signed the July 27 Agreement once it was presented to her, the submission of the July 27 Agreement did not occur until after the filing of King's Motions. Under the circumstances, the Court does not believe that sanctions are appropriate.

### VI.

In sum, the Court **GRANTS** Sallie Mae's Motion to Enforce [the July 27 draft] Settlement Agreement; **DENIES** King's Motion to Reinstate Civil Action and Motion for Summary Judgment; and **DENIES** Sallie Mae's Motion for Rule 11 Sanctions.

A separate Order will **ISSUE.**

                                        /s/
                              _____
                              **PETER J. MESSITTE**
                              **UNITED STATES DISTRICT JUDGE**

**August 19, 2009**

UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

JILLYN K. SCHULZE
UNITED STATES MAGISTRATE JUDGE

6500 CHERRYWOOD LANE
GREENBELT, MARYLAND 20770
(301) 344-0630
FAX: (301) 344-0629

King v Sallie Mae
PJM 08-2934

6/5/09

Settlement agreement

Δ to provide ltr. of apology to father
Δ to credit outstanding debt by $19,000 - no strings
π to execute full release

Patricia [signature]

Dow [signature]
FOR SALLIE MAE